JAMES L. DENNIS, Circuit Judge, concurring in the judgment:
In my view, we need not decide the difficult question of whether a Bivens remedy should be available under the circumstances of this case because, under Supreme Court precedent, Agent Mesa is entitled to qualified immunity. I find compelling the plaintiffs' arguments that Hernández was entitled to protections under the Fourth Amendment in light of Boumediene v. Bush , 553 U.S. 723, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), and the circumstances surrounding the border area where Mesa shot and killed him. See Hernandez v. Mesa , --- U.S. ----, 137 S.Ct. 2003, 2008-11, 198 L.Ed.2d 625 (2017) (Breyer, J., joined by Ginsburg, J., dissenting). But the extraterritorial application of these protections to Hernández was not clearly established at the time of Mesa's tortious conduct. Mesa is therefore entitled to qualified immunity. See Mullenix v. Luna , --- U.S. ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights." (internal quotation marks omitted) ).
*824 The plaintiffs contend that questions about the extraterritorial application of constitutional protections do not preclude Mesa's liability. After all, according to the complaint, Mesa essentially committed a cold-blooded murder.[1] Surely every reasonable officer would know that Mesa's conduct was unlawful, the plaintiffs argue. While that is a fair point, I believe this argument is foreclosed by Supreme Court precedent, which holds that the right giving rise to the claim-here, Hernández's Fourth Amendment rights-must be clearly established. See Davis v. Scherer , 468 U.S. 183, 197, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).
In Davis v. Scherer , the Supreme Court held, "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Id. (emphasis added). The Court stated that "officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages." Id. at 195, 104 S.Ct. 3012. In light of Davis , the plaintiffs' argument that Mesa forfeited his qualified immunity because his conduct was shockingly unlawful cannot succeed. I am therefore compelled to concur in affirming the district court's dismissal of the plaintiffs' claims.

While the majority's opinion casts aspersions on the viability of plaintiffs' Fifth Amendment claim, I continue to disagree. As I discussed at length in my original panel majority opinion and in my original en-banc concurrence, a noncitizen injured outside the United States as the result of arbitrary official conduct by a law enforcement officer located in the United States should be entitled to invoke the protections provided by the Fifth Amendment. See Hernandez v. United States , 757 F.3d 249, 267-72 (5th Cir. 2014) (original panel opinion); Hernandez v. United States , 785 F.3d 117, 134-39 (5th Cir. 2015) (en banc) (Prado, J., concurring). However, I focus here only on the "antecedent" question regarding the availability of a Bivens remedy. See Hernandez v. Mesa , --- U.S. ----, 137 S.Ct. 2003, 2006, 198 L.Ed.2d 625 (2017).