# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-11398

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2020

Lyle W. Cayce
Clerk

WILLIAM R. CANADA, JR.,

      Plaintiff – Appellant

v.

UNITED STATES OF AMERICA (INTERNAL REVENUE SERVICE); MICHAEL HALPERT, Individually and not in his official capacity; ROBERT MEYER, Individually and not in his official capacity; DENISE MCCASKILL, Individually and not in her official capacity,

      Defendants – Appellees

Appeal from the United States District Court
For the Northern District of Texas

Before HAYNES and OLDHAM, Circuit Judges, and HANEN,[*] District Judge.

ANDREW S. HANEN, District Judge:

Appellant, William Canada, Jr., successfully challenged in bankruptcy court a tax penalty assessed against him by the Internal Revenue Service (the "IRS") that exceeded $40 million. A few months after a district court affirmed the bankruptcy court's decision on the tax liability issue, Canada filed an independent lawsuit against the IRS and three IRS agents in their individual capacities (the "Individual Defendants") (collectively, the "Defendants").[1]

---

[*] District Judge of the Southern District of Texas sitting by designation.

[1] For purposes of clarity, this court will refer to the district court that handled the IRS's appeal on the Bankruptcy Court's order disallowing the assessed penalties as the

No. 18-11398

Canada pleaded a claim for damages against the Individual Defendants under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), for allegedly violating his Fifth Amendment right to procedural due process, and further sought from the IRS the attorney's fees he incurred litigating the penalty issue in his Chapter 11 bankruptcy case under 26 U.S.C. § 7430 and the Equal Access to Justice Act, 28 U.S.C. § 2412.

The district court below granted the Defendants' Rule 12(b)(6) motion and dismissed the lawsuit with prejudice because: (1) special factors counselled against extending a *Bivens* action to this new context; (2) the Individual Defendants were protected by qualified immunity; and (3) Canada's request for attorney's fees under the Internal Revenue Code was untimely. Canada timely appealed those rulings to this court.

We affirm.

## I.    Background

Canada is a lawyer who primarily worked as a commercial litigator from 1979 through 1995. At that point, he joined the Heritage Organization, LLC ("Heritage"), which specialized in personal finance and estate planning strategies for high-net-worth individuals. Canada was Heritage's President from 1995 to 2002 and Chief Operating Officer between 1995 and 2000.

In 1998, an outside law firm informed Heritage of a new strategy designed to reduce capital gains taxes for Heritage's clients. Although the strategy varied depending on the specific situation, generally Heritage would advise a client to open an individual brokerage account, short-sell Treasury securities through that account, and reinvest the short-sale proceeds in reverse

---

"initial district court." The district court that dismissed Canada's lawsuit at issue in this appeal will be called the "district court below."

## No. 18-11398

repurchase agreements.[2] The client would then contribute the brokerage account (including the obligation to repurchase the Treasury securities) to a newly-formed pass-through entity. This strategy allowed Heritage's clients to reduce large capital gains by generating artificial losses, and thus reduce the taxpayer's overall capital gains tax.

Heritage successfully suggested the artificial loss strategy (the "Transactions") to multiple clients between 1998 and 2002. Canada left Heritage in 2002 because of a compensation dispute. Two years later, he won a large arbitration award against the company, which apparently compelled it to file for bankruptcy. In 2007, during Heritage's bankruptcy case, Canada received notice letters informing him of an IRS investigation regarding possible penalties under 26 U.S.C. §§ 6707 and 6108 for failing to report tax shelter transactions as required by 26 U.S.C. § 6111.[3] In April 2015, the IRS notified Canada of its intention to impose penalties as high as $49,108,452 against him under 26 U.S.C. § 6707.[4] According to Canada, the IRS ignored his protests on the merits of the penalties and would only discuss his ability to actually pay them. Additionally, one of the Individual Defendants allegedly told Canada's attorney that "all of the IRS's proposed promoter penalties like the penalties to be assessed against Canada had been sustained by the IRS Appeals division 100% of the time." After reviewing Canada's

---

[2] The description of the tax strategy is taken from the initial district court's published opinion affirming the bankruptcy court's disallowance of the assessed penalties. *See United States v. Canada (In re Canada)*, 574 B.R. 620, 623 (N.D. Tex. 2017).

[3] The Transactions were eventually characterized as "Son of BOSS" tax shelter transactions and were ultimately disallowed by the IRS and the courts. *See, e.g.*, *Kornman & Assocs. v. United States*, 527 F.3d 443, 446–48 (5th Cir. 2008) (describing one of the Transactions conducted by a Heritage client).

[4] Section 6707 imposes a penalty on any person fails to disclose to the IRS a "reportable transaction" as required under 26 U.S.C. § 6111. Both provisions have been amended since Canada left Heritage. There is no dispute that the language of 26 U.S.C. § 6111, at the relevant time, required a "tax shelter organizer" to register a "tax shelter," which meant "any investment" that met certain criteria not relevant to this appeal. *See In re Canada*, 574 B.R. at 629.

No. 18-11398

financial situation, the IRS proposed he pay it $5 million, a sum which he claims was substantially in excess of his net worth. Feeling like he had no other option, on September 15, 2015, Canada filed a voluntary Chapter 11 bankruptcy petition.

On Canada's Schedule B (disclosure of personal property), he listed $1 million for contingent and unliquidated "[c]laims against the IRS and individual IRS Agents," among others.[5] The IRS filed a proof of claim for $40,346,167.87, all but approximately $58,000 of that amount represented the 26 U.S.C. § 6707 penalties. Canada timely objected to the claim. The bankruptcy court held a two-day trial and ultimately sustained Canada's objections and disallowed the IRS's claim for the penalties because: (1) the Transactions were not "tax shelters" under 26 U.S.C. § 6111(c); and (2) even if they were, Canada had "reasonable cause" for not registering them. *In re Canada*, No. 15–33757–BJH, 2016 Bankr. LEXIS 2234 (Bankr. N.D. Tex. June 7, 2016).

On May 8, 2017, the initial district court affirmed the bankruptcy court on both points.[6] *See In re Canada*, 574 B.R. at 641. The IRS did not appeal that district court's decision. It is now a final order and not at issue in this case. In the meantime, the bankruptcy court confirmed Canada's Chapter 11 plan of reorganization in March 2017. Canada also fully administered his plan, received a discharge, and his bankruptcy case was closed on May 9, 2017.

---

[5] Canada's Schedule B did not describe these contingent and unliquidated claims he allegedly had against the Defendants; specifically, it did not mention a *Bivens* cause of action or a claim for attorney's fees.

[6] Both courts determined the Transactions did not satisfy 26 U.S.C. § 6111(c)'s definition of a tax shelter because a shelter must be an "investment" and the courts found that the Transactions did not satisfy the ordinary meaning of that term. *See In re Canada*, 574 B.R. at 627–37; *In re Canada*, 2016 Bankr. LEXIS 2234 at *33–46. Specifically, they determined "[a]ll that [the] clients purchased from Heritage was the idea[,]" and "Heritage did not sell the client the Treasury securities or the business entities to implement the strategy; it merely gave the client the idea." *In re Canada*, 574 B.R. at 631–32; *see also In re Canada*, 2016 Bankr. LEXIS 2234, at *35 ("[T]he Heritage Transactions are more properly thought of as ideas or . . . strategies.").

No. 18-11398

## II.   Procedural History

Canada filed the underlying lawsuit against the Defendants on September 14, 2017. His Amended Complaint seeks damages under *Bivens* against the Individual Defendants for abridging his rights under the Due Process Clause of the Fifth Amendment when they knowingly and intentionally subjected him to a baseless penalty pegged at an amount so high that he could not seek judicial review. Canada also pleaded for recovery of the attorney's fees he incurred in the bankruptcy litigation pursuant to either the Equal Access for Justice Act or 26 U.S.C. § 7430. The Defendants moved to dismiss Canada's Amended Complaint.

The case was referred to a Magistrate Judge, who recommended that Defendants' motion be granted, and that Canada's case be dismissed with prejudice. Specifically, the Magistrate Judge found that an action under *Bivens* cannot be brought in this case since: (1) Canada's claims are a new *Bivens* context under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and as such are discouraged; and (2) special factors counsel hesitation to imply a claim for damages against the Individual Defendants. Moreover, the Magistrate Judge determined that the Individual Defendants were protected by qualified immunity. Lastly, the recommendation suggested Canada's claim for attorney's fees be dismissed. In particular, the recommendation noted that 26 U.S.C. § 7430 precludes Canada's recovery of fees under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(e); *Info. Res., Inc. v. United States*, 996 F.2d 780, 785 n.5 (5th Cir. 1993). The Magistrate Judge also agreed with the Defendants that Plaintiff's application for fees under 26 U.S.C. § 7430 was untimely and not tolled by 11 U.S.C. § 108(a).

No. 18-11398

The district court below adopted the Magistrate Judge's findings, conclusions, and recommendation over Canada's objections and dismissed the case with prejudice. Canada timely appealed.[7]

### III.   Standard of Review

The court reviews dismissals under Rule 12(b)(6) *de novo*. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

The court also reviews the grant of qualified immunity *de novo*. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). "Our jurisdiction over qualified immunity appeals extends to 'elements of the asserted cause of action' that are 'directly implicated by the defense of qualified immunity[,]' including whether to recognize new *Bivens* claims." *De La Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015) (internal citation and quotation omitted).

### IV.   Discussion

**A.   Extending *Bivens* Under the *Ziglar* Test**

In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers for violating the Fourth Amendment's prohibition against unreasonable searches and seizures. *See* 403 U.S. at 397. "In the next nine years, the Court recognized two more implied causes of action under *Bivens*: a Fifth Amendment equal protection claim for employment discrimination by a congressman . . . and an Eighth Amendment claim for inadequate medical care by federal jailers . . . ." *Cantú v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (first citing *Davis v. Passman*, 442 U.S. 228 (1979); and then citing *Carlson v. Green*, 446 U.S. 14 (1980)).

---

[7] Canada does not contest on appeal the district court below's dismissal of his claim for attorney's fees under the Equal Access to Justice Act. Accordingly, the court shall not address that claim further.

No. 18-11398

In the 40 years since *Carlson*, the Supreme Court has not approved of any other implied damages remedy under the Constitution. *See Ziglar*, 137 S. Ct. at 1855; *see also id.* at 1857 (collecting cases). Indeed, the Supreme Court acknowledged that its analysis in *Bivens*, *Davis*, and *Carlson* "might be different if they were decided today." *Id.* at 1856. Although those three cases remain "good law," the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1856–57 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

*Ziglar* also dictates, "with an exacting description[,]" the two-part analysis for implying *Bivens* claims. *Hernandez v. Mesa*, 885 F.3d 811, 816 (5th Cir. 2018) (*en banc*), *cert. granted*, 139 S. Ct. 2636 (No. 17–1678).[8] First, the court must decide if the case before it involves a "new context" that is distinct from *Bivens*, *Davis*, and *Carlson. Ziglar*, 137 S. Ct. at 1859; *see also, e.g.*, *Cantú*, 933 F.3d at 422. If so, the court must then assess whether there are "special factors" counselling hesitation to extending a *Bivens* claim to this context. *Ziglar*, 137 S. Ct. at 1857; *see also, e.g.*, *Maria S. v. Garza*, 912 F.3d 778, 784 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 81 (2019).

Canada's *Bivens* claims are based on his allegations that the Individual Defendants' actions in assessing and calculating a tax penalty against him were malicious and effectively deprived him of a means of judicial review. To fully understand this accusation, a brief summary of the tax adjudication system is necessary.

Generally, a taxpayer has several options to challenge an IRS tax or penalty assessment. First, after a tax liability is assessed, the taxpayer can appeal to the IRS Appeals Office; this administrative review does not require the taxpayer to first pay the assessed amount. *See* 26 C.F.R. §§ 601.105,

---

[8] At oral argument, counsel from both parties agreed that the appeal in *Hernandez* was not likely to affect the outcome here and that this court need not to wait for the Supreme Court to issue its opinion in *Hernandez* before deciding this case.

No. 18-11398

601.106; *see also Diversified Grp. Inc. v. United States*, 841 F.3d 975, 980–81 (Fed. Cir. 2016). The taxpayer may also "pay the [full amount of tax or] penalty, request a refund from the IRS, and, if unsuccessful, sue to recover a refund[]" in district court or federal claims court. *Diversified Grp.*, 841 F.3d at 981 (citations omitted); *see also Smith v. United States*, 495 F. App'x 44, 48 (Fed. Cir. 2012). Alternatively, the tax court provides a forum to challenge an assessed amount "without first paying the tax." *Id.* at n.3 (citing *Flora v. United States* (*Flora II*), 362 U.S. 145, 163 (1960)).

The Internal Revenue Code also provides an opportunity to be heard after a tax or penalty is assessed but before a tax levy is imposed by the IRS Appeals Office ("Collection Due Process hearings"), at which time a taxpayer can challenge, among other things, "the existence or amount of the underlying tax liability" if he or she "did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. § 6330(c)(2)(B). Lastly, a taxpayer can wait until the IRS brings an action to enforce a tax lien or subject property to payment of tax, where he or she can litigate the merits of tax liability. *See id.* § 7403.[9]

The desirability of the tax court and the ability to sue "without paying a cent[]" first is apparent. *Flora II*, 362 U.S. at 176. Congress, however, "has generally declined to authorize [tax court] jurisdiction over assessed penalties, such as the [26 U.S.C.] § 6707 penalties at issue here." *Diversified Grp.*, 841 F.3d at 981 n.3 (citations omitted); *accord Keller Tank Servs. II v. Comm'r*, 854 F.3d 1178, 1117 (10th Cir. 2017). Thus, typically the "only judicial recourse [for penalties imposed under 26 U.S.C. § 6707] is a refund action in the District Court (or the Court of Claims)." *Larson v. United States*, 888 F.3d 578, 581 (2d Cir. 2018).

---

[9] Taxpayers who prevail in any administrative or court proceeding involving the IRS's determination, collection, or refund of any tax, interest, or penalty can generally recover their costs and attorney's fees related to that proceeding. *See* 26 U.S.C. § 7430.

No. 18-11398

## 1. New Context

"The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is still an extension." *Id.* at 1864.

Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new context. *See, e.g.*, *Ziglar*, 137 S. Ct. at 1860; *Iqbal*, 556 U.S. at 675 ("For while we have allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment . . . we have not found an implied damages remedy under the Free Exercise Clause.") (citation omitted); *Wilkie v. Robbins*, 551 U.S. 537, 547–48 (2007); *FDIC v. Meyer*, 510 U.S. 471, 473–74 (1994). To be sure,

> [n]o one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.

*Cantú*, 933 F.3d at 422.

Instead, the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*. *Ziglar*, 137 S. Ct. at 1859; *see also Loumiet v. United States*, __ F.3d __, No. 18-5020, 2020 U.S. App. LEXIS 2681, 2020 WL 424919, at *4 (D.C. Cir. Jan. 28, 2020). Canada's claims that IRS agents intentionally manipulated a penalty assessment to ensure he could not pay the amount and sue for a refund "bear little resemblance to the three *Bivens* claims

the Court has approved in the past." *Id.* at 1860 (citations omitted). Thus, contrary to Canada's argument, the facts of this case clearly present a new context for a *Bivens* remedy.

Canada also asserts that this court in *Rutherford v. United States*, 702 F.2d 580 (5th Cir. 1983), recognized the possibility of a taxpayer's *Bivens* claims against IRS agents on very similar facts. In that case, the plaintiffs accused two IRS agents of inventing additional gross income, intentionally assessing duplicative penalties, making repeated demands for useless documentation, charging the plaintiffs with hiding money, and arranging an audit report be delivered on the night of Christmas Eve. *Rutherford*, 702 F.2d at 581. The district court in that case dismissed their case because "post-deprivation process existed in the form of available administrative and judicial proceedings for recovery of taxes over-assessed . . . and [those] remedies had been held constitutionally adequate." *Id.* (citations omitted).

This court reversed because it read the plaintiffs' complaint as alleging a deprivation of a liberty interest, not a property interest as the district court had held. *Id.* While discussing remand, the court noted that the "district court may wish to consider in this connection the several suggestions, albeit in dicta, that abuse in tax collection might lay the foundation for a *Bivens* action." *Id.* at 585.

While *Rutherford* initially appears to help Canada because its dicta suggests that a *Bivens* claim against IRS agents might be cognizable, upon in-depth consideration it proves to be less helpful than one might think. First and foremost, this court did not actually recognize a *Bivens* claim. *See Rutherford*, 702 F.2d at 584–85. Indeed, the sentence quoted above is merely a suggested point of consideration for the district court on remand. To say that this sentence recognized a *Bivens* claim is too broad of an interpretation.

No. 18-11398

Even if *Rutherford* implied a *Bivens* remedy for abusive tax collection practices, that fact is immaterial under the *Ziglar* test. The "new context" analysis focuses on whether the case differs in a meaningful way from previous *Bivens* cases decided by the Supreme Court, not a three-judge court of appeals panel. *Ziglar*, 137 S. Ct. at 1859; *see also Cantú*, 933 F.3d at 422 ("[D]o [the] claims fall into one of the three existing *Bivens* actions?"); *Loumiet*, 2020 WL 424919, at \*4 (explaining that opinions where the D.C. Circuit has recognized a *Bivens* claim have been "overtaken" by *Ziglar*'s "holding that the new-context analysis may consider only Supreme Court decisions approving *Bivens* actions.") (citation omitted).

Moreover, even assuming *arguendo* that *Rutherford* "recognized" a *Bivens* remedy and that such a holding was material under the *Ziglar* test, Canada's case is still a "modest extension" of that case. *See Ziglar*, 137 S. Ct. at 1864. *Rutherford* involved a violation of the plaintiffs' liberty interests in being free from harassing tax collection practices. *See* 702 F.2d at 584–85. Canada's claims allege abusive assessment of penalties that result in the deprivation of procedural due process. There are enough distinguishing factors and circumstances between the two cases to qualify Canada's case as a modest extension of *Rutherford*.

Most importantly, *Rutherford* was decided during the "*ancien regime*" when implying a cause of action for Constitutional violations was not explicitly a "disfavored" judicial activity. *See Ziglar*, 137 S. Ct. at 1855, 1857. It also preceded substantial changes to the tax adjudication process, such as the codification of the IRS Appeals Office review and Collection Due Process hearings. *See* Internal Revenue Service Restructuring and Reform Act of 1988, Pub. L. 105–206, 112 Stat. 746 (1988) (codified as 26 U.S.C. § 6330); *see also Lewis v. Comm'r*, 128 T.C. 48, 51–61 (2007).

11

No. 18-11398

All of these reasons confirm that the district court below properly concluded that this case is a new *Bivens* context under *Ziglar*.[10]

## 2. Special Factors

"[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. 1857 (quoting *Carlson*, 446 U.S. at 18). A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong.[11] *Id.* at 1858. The court's focus is on maintaining the separation of powers: "separation-of-powers principles are or should be center to the analysis." *Hernandez*, 885 F.3d at 818 (quoting *Ziglar*, 137 S. Ct. at 1857). The only relevant threshold—that a factor "counsels hesitation"—is remarkably low. *See id.* at 822. If any special factors do exist, then "'courts *must refrain* from creating'" an implied cause of action in that case. *Maria S.*, 912 F.3d at 784 (quoting *Ziglar*, 137 S. Ct. at 1858).

### i. Procedural Points of Error

Canada identifies several alleged procedural points of error in the district court below's finding of special factors. First, he complains that the

---

[10] Canada takes issue with the district court below's "conclusion" that a case which presents a new *Bivens* context mandates dismissal. The district court below merely stated what this court wrote in *Hernandez*. *See* ROA at 453–54 ("[W]hile . . . *Hernandez* suggested that . . . 'the newness of this 'new context' should alone require dismissal of the plaintiffs' damage claims,' 885 F.3d at 818, the Supreme Court's decisions . . . appear to require a court to analyze whether any 'special factors'" exist "in any case that presents a 'new context' for *Bivens* purposes . . . .") (citations omitted). Nevertheless, the district court below did analyze the "special factors" prong of *Ziglar*'s two-part test. Therefore, even if the district court below erred in "concluding" that a new context mandates dismissal, such an error was harmless.

[11] Canada argues that the district court below improperly considered the special factors by applying a "sound reason" standard rather than a "convincing reason" one. Canada asserts the latter is what *Ziglar* requires. *See* Appellant's Br. at 23–24. Not so. Canada's brief quotes Justice Breyer's dissent in *Ziglar*, not the majority opinion. *Id.* (citing *Ziglar*, 137 S. Ct. at 1876 (Breyer, J., dissent)); *see also Ziglar*, 137 S. Ct. at 1858 (majority opinion) ("[I]f there are *sound reasons* to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy . . . .") (emphasis added).

## No. 18-11398

district court below impermissibly shifted the burden to establish the special factors. Canada believes the burden should lie with the Individual Defendants based on the Supreme Court's opinion in *Carlson*. *See* 446 U.S at 18 ("[A *Bivens*] cause of action may be defeated in a particular case, however, in two situations. The first is when *defendants demonstrate* special factors counselling hesitation in the absence of affirmative action by Congress.") (emphasis added) (internal citations and quotations omitted). Defendants disagree and argue that the existence of special factors are determined in "quasi-jurisdictional terms" (i.e., without regard to the burden of proof). Appellees' Br. at 32. Although recent cases like *Ziglar* and *Hernandez* support Defendants' position, it is unnecessary for this court to decide that issue because the Defendants raised the three special factors that the district court below addressed.[12]

Additionally, Canada argues that the district court below erred by not performing its special factors analysis at a "high level of specificity" rather than an "abstract level." *See Rodriguez v. Swartz*, 899 F.3d 719, 738 (9th Cir. 2018), *petition for cert. filed*, __ U.S __ (U.S. Sept. 7, 2018) (No. 18–309). In *Rodriguez*, the Ninth Circuit suggested that a "high level of specificity" means looking for "special factors in terms of the specific facts alleged in the complaint," not broad generalities or hypothetical cases. 899 F.3d at 744. The district court below's analysis was sufficiently tied to the facts alleged in Canada's Amended Complaint and did not overly concentrate on hypothetical penalty assessment cases. To be sure, Canada identifies no specific factor that the district court below found that was analyzed at an "abstract level."

---

[12] In fact, the Supreme Court as early as 1983 seemingly disposed of placing the burden on the defendants; instead, placing the onus on the courts. *See Bush v. Lucas*, 462 U.S. 367, 378 (1983) ("[T]he federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however to any special factors counselling hesitation before authorizing a new kind of federal litigation.").

No. 18-11398

Therefore, assuming the Ninth Circuit's high level of specificity requirement applied to the district court below, it still complied.

### ii.     Substantive Points of Error

Turning to the substance of the special factors analysis, the district court below discussed three special factors raised by the Defendants: (1) the risk of disruptive intrusion by the courts into the executive tax collection efforts; (2) the alternative remedies available; and (3) Congress' repeated failure to enact a damages remedy. While it did not expressly accept or reject the first two factors, on the third factor the district court below found "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" for the Constitutional violation alleged. This court will address these factors in reverse order.

First, the district court below is undoubtedly correct that Congress chose to omit a damages remedy as to tax penalties assessed and to limit judicial review to post-payment and bankruptcy review. This is significant considering Congress has enacted statutes that provide taxpayers a damage remedy for other actions taken by IRS agents. *See* 26 U.S.C. §§ 7431–7433A, 7435. Notably, these statutes do not include a cause of action for wrongfully assessed penalties.

Congress' failure to include a damages remedy for malicious assessment of penalties, despite enacting statutes that provide for damages when IRS agents commit other tortious actions, counsels hesitation in extending a *Bivens* remedy for that conduct. Indeed, Congress' decision to consistently preclude a recovery for damages for taxpayers in Canada's position strongly suggests Congress doubts the efficacy or necessity of such a remedy.[13] *See Ziglar*, 137 S. Ct. at 1858.

---

[13] Congress also could have, but chose not to, make an exception to the full payment rule for penalties under 26 U.S.C. § 6707. *Cf.* 26 U.S.C. § 6703(c) (permitting partial payment for penalties assessed under 26 U.S.C. §§ 6700 and 6701).

No. 18-11398

In addition, as discussed above, Congress has enacted a complex statutory system for taxpayers to challenge penalties assessed against them and to recover certain costs and fees. Similar statutory systems have been held to be an adequate alternative remedy in lieu of a *Bivens* claim. *See Schweiker v. Chilicky*, 487 U.S. 425–26 (1988); *Bush*, 462 U.S. at 386–88. In those cases, the Supreme Court rejected arguments (similar to Canada's) that less than "complete relief" is not a Congressional failure to provide meaningful safeguards and remedies. *See Bush*, 462 U.S. at 388; *Schweiker*, 487 U.S. at 425; *cf. Baddour*, 802 F.2d at 808–09 (stating neither "the Constitution nor the Internal Revenue Code requires more relief than" refunding erroneously collected taxes with interest and awarding attorney's fees for taxpayers who successfully challenge tax assessments).

The complex statutory system also supports the Defendants' position that courts implying a cause of action would risk disrupting the IRS's agency decisions and collection efforts. Indeed, creating a non-legislative avenue of relief that would impose personal liability on IRS agents would hamper the ability of IRS agents to perform the difficult and vital task of determining and collecting taxes. *See Baddour*, 802 F.2d at 808. Put differently, "Congress has given taxpayers all sorts of rights against an overzealous officialdom, . . . and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing" a *Bivens* action against IRS employees. *Id.* (quoting *Cameron v. Internal Revenue Serv.*, 733 F.2d 126, 129 (7th Cir. 1985)).

Therefore, all three of the special factors suggested by Defendants are sound reasons that counsel the court's hesitation to extend a *Bivens* claim in this case.[14] Canada's arguments to the contrary are not persuasive. He asserts

---

[14] Canada appears to argue that special factors only include the type of facts and circumstances found in *Ziglar* and *Hernandez*. In other words, he contends to be a special factor the situation must involve issues of national security or actions taken by a high-level

No. 18-11398

there is no reason to believe that Congress' failure to provide a damages remedy for the "constitutional torts inflicted on [him]" are more than a "mere oversight", and its silence more than "inadvertent." To support that contention, he points to the 1987 IRS Commissioner's testimony before a Senate Subcommittee in April 1987. The Commissioner was testifying about, in relevant part, a proposed cause of action against IRS employees for "the deprivation of any rights, privileges, or immunities secured by the Constitution." *See* Taxpayers' Bill of Rights Act, S. 579, 100th Cong. (1987). He said:

> A right of action against [IRS] employees currently exists. The Supreme Court recognized a cause of action directly under the Constitution in [*Bivens*.] *Bivens* suits are an available remedy for those whose Constitutional rights have been violated by Federal employees acting under the color of Federal law. In fact, more than 1,000 *Bivens* suits were filed against [IRS] employees during the fiscal years 1980 through 1986. It should be noted, however, that none of these suits has been ultimately successful."

*Taxpayers' Bill of Rights, Part 1: Hearings on S. 579 and S. 604 Before the Subcomm. on Private Retirement Plans and Oversight of the IRS*, 100th Cong. 243 (1987). A year and a half later, Congress passed the Technical and Miscellaneous Revenue Act of 1988, which enacted certain causes of actions for taxpayers to collect damages against the IRS but omitted a claim for Constitutional violations. *See* Pub. L. No. 101–647, 102 Stat. 3747 (1988) (codified as 26 U.S.C. §§ 7432, 7433).

---

official in response to a crisis. To support this proposition, he cites the D.C. district court's opinion in *Loumiet v. United States*, 292 F. Supp. 3d 222, 229 (D.D.C. 2017). That holding, however, was reversed by the D.C. Circuit Court of Appeals. *See Loumiet*, 2020 WL 424919. As recognized by the D.C. Circuit in that reversal, *Ziglar* itself mentions alternative remedial structures and alternative methods of relief as potential special factors. *Id.* at *5 (citing *Ziglar*, 137 S. Ct. at 1858, 1863). In addition, that court noted, just as this court discussed above, "[t]wo Supreme Court cases—*Bush* and *Chilicky*—illustrate these special factors." *Id.*; *see also id.* at *6 (discussing the administrative enforcement scheme as a special factor). Consequently, the absence of action taken by a high-ranking official in a crisis or matters of national security does not alter this court's finding that special factors exist here.

Canada believes that the proposed cause of action was ultimately omitted because of the Commissioner's testimony and, thus, Congress acted "with the explicit understanding that taxpayers already enjoyed a remedy for such injuries under *Bivens*[,]" not because "Congress' intent [was] that taxpayers be denied any remedy for those violations or injuries." Based upon these premises, Canada suggests this court must interpret Congress' decision to "enact a statutory remedy which it views as fully adequate only in combination with the *Bivens* remedy." *Carlson*, 446 U.S. at 19 n.5.

To the extent legislative history is even relevant, Canada's legislative history argument completely ignores the testimony that none of the over 1,000 *Bivens* suits filed between 1980 and 1986 resulted in a money judgment for the taxpayer. Moreover, Canada would have the court believe that at least the majority of Congress chose to eliminate a statutory cause of action for Constitutional violations because of one executive employee's conclusory opinion as to the application of *Bivens*.

Finally, Canada's reliance on the 1987 testimony overlooks the fact that Congress has enacted statutes that provide taxpayers with a claim for damages concerning the actions of IRS agents in the intervening 33 years. *See* 26 U.S.C. §§ 7431–7433A, 7435. Not to mention, the Supreme Court has made clear that it has never recognized a *Bivens* remedy for taxpayers who allege IRS agents violated their Constitutional rights. *See Ziglar*, 137 S. Ct. at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the *only instances* in which the Court has approved of an implied damages remedy under the Constitution itself.") (emphasis added). Canada's reliance on the footnote in *Carlson* is inconsistent with the Supreme Court's later opinion to the effect that legislative inaction is not inadvertent when Congress repeatedly enacts legislation to reform an administrative process, but at no point chose to extend the kind of remedies sought. *See Schweiker*, 487 U.S. at 426.

Simply put, Congress has passed several statutes concerning the system for adjudicating tax disputes and damage remedies for taxpayers. Absent from this system, however, is a claim for damages for taxpayers who, like Canada, accuse IRS agents of intentionally imposing a tax penalty too high to pay before seeking judicial review. Congress' silence strongly suggests this is more than a mere oversight. In any event, this court cannot recognize an implied *Bivens* claim without violating the separation-of-powers principles that are at the core of the special factors analysis. *See Hernandez*, 885 F.3d at 818 (quoting *Ziglar*, 137 S. Ct. at 1857); *cf. Schweiker*, 487 U.S. at 429 ("Whether or not we believe that its response was the best response, Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program . . . .") (citation omitted).

The district court below properly found that Canada's claims against the Individual Defendants alleged a new *Bivens* context and that special factors exist under *Ziglar*. We therefore affirm the dismissal of those claims.[15]

## B.     Canada's Claim for Attorney's Fees Under 26 U.S.C. § 7430

Canada's Amended Complaint also sought to recover attorney's fees from the IRS under 26 U.S.C. § 7430 for the fees he incurred litigating the assessed penalties in his bankruptcy case. Specifically, he pleaded he "is eligible and entitled to recover from the IRS reasonable attorney's fees, costs, and expenses incurred in [his objection to the IRS's proof of claim] in his Chapter 11 bankruptcy case." Further, he explained that the amount of attorney's fees "are contained in the First and Final Fee Application" that Canada's attorney filed with, and was approved by, the bankruptcy court. That fee application demonstrates that Canada's bankruptcy attorney incurred "$99,975.00 for his professional services rendered from September 15, 2017 [*sic*], through April 3,

---

[15] Since Canada failed to plead a cognizable *Bivens* cause of action, this court need not address whether the Individual Defendants are entitled to qualified immunity as to that claim.

No. 18-11398

2017" and "$2,256.59 for actual disbursements and expenses incurred in representing Debtor in" the bankruptcy case. *See* Case No. 15–33757–bjh11, Doc. No. 204 at 6; *see also id.* at 1 (showing the time period as September 15, 2015 through April 3, 2017).[16]

> Title 26, Section 7430 provides:

> In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under [the Internal Revenue Code], the prevailing party may be awarded a judgment or settlement for—

> (1) reasonable administrative costs incurred in connection with such administrative proceeding within the [IRS], and

> (2) reasonable litigation costs incurred in connection with such court proceeding.

26 U.S.C. § 7430(a). The statute also makes clear that "costs" includes reasonable attorney's fees related to the court or administrative proceeding. *Id.* § 7430(c)(1)(B)(iii), (c)(2)(B).

There is no question that Canada prevailed on the tax penalty issue; however, to qualify as a "prevailing party," Canada had to submit an application for fees and other expenses to the court within thirty days of final judgment in the action. *See id.* § 7430(c)(4)(A)(ii) ("The term 'prevailing party' means any party in any proceeding . . . which meets the requirements of the 1st sentence of" 28 U.S.C. § 2412(d)(1)(B) . . . ."); *see also* 28 U.S.C. § 2412(d)(1)(B) (prescribing a 30-day deadline following a final judgment).

---

[16] The fee application in the bankruptcy court was not included in the record on appeal, but we "may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom." *CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 249 n.3 (5th Cir. 2006) (internal citation and quotation omitted).

No. 18-11398

In this case, the bankruptcy court sustained Canada's claim objection and disallowed the IRS's penalties in June 2016. The initial district court affirmed that order on May 8, 2017. It is undisputed that the IRS's deadline to appeal to this court was July 7, 2017. *See* FED. R. APP. P. 4(a)(1)(B). Since the IRS declined to initiate such an appeal, the initial district court's order became final (at the latest) on July 8, 2017. Accordingly, viewed most favorably to him, Canada had until August 7, 2017 to file an application for fees under 26 U.S.C. § 7430(c)(4)(A)(ii). He did not file an application in the bankruptcy or district court involved in the actual resolution of the penalty issue; nor did he file this lawsuit with the district court below until September 14, 2017.[17]

Canada contends that the ordinary 30-day limitations period was tolled by the bankruptcy case under 11 U.S.C. § 108(a), which provides:

> If applicable nonbankrutpcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee [or debtor-in-possession] may commence such action only before the later of—
>
> (1) the end of such period, including such suspension of such period occurring on or after the commencement of the case; or

---

[17] It is unclear why Canada did not simply file an application for fees in the bankruptcy court or in the initial district court. Canada states the IRS's appeal to the district court deprived the bankruptcy court of jurisdiction to consider his fee request. Canada also contends that the appeal forecloses the IRS's untimeliness argument or is a compelling reason to extend the 26 U.S.C. § 7430's 30-day period. These arguments make little sense. He could have filed a motion for the recovery of fees at any time during the pendency of the case in the bankruptcy court. Canada also had the option of moving to reopen the bankruptcy case once the initial district court's ruling on appeal became unappealable. *See* 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."). Similarly, Canada had the ability to ask the initial district court to award him fees anytime between the start of the appeal and 30-days after the IRS could no longer appeal the district court's order. There is no convincing reason why Canada could not have filed an application for fees under 26 U.S.C. § 7430 in one of those two courts before August 2017 because of an appeal that ended on May 8, 2017. Nevertheless, assuming *arguendo* that his proposition is accurate, he still could have filed this lawsuit before the 30-day time period lapsed.

No. 18-11398

(2) two years after the order for relief.

11 U.S.C. § 108(a); *see also id.* § 1107.

Canada's "order for relief" (i.e., the date he filed his bankruptcy petition) was September 15, 2015. *See id.* § 301(b). He thus contends that his September 14, 2017 filing of this case falls within 11 U.S.C. § 108(a)(2)'s two-year tolling provision and was therefore timely filed. The Defendants argued, and the district court below agreed, that Canada's 30-day limitations period was not tolled and thus his fee application was untimely.[18]

The court notes that all of the fees Canada seeks to recover were incurred during the pendency of the bankruptcy and they became recoverable when he prevailed in the bankruptcy court and was thereafter affirmed by the initial district court. The tolling provision (11 U.S.C. § 108(a)) is designed to impact or apply to claims whose statute of limitations are already running as of the date of the filing of the bankruptcy petition. See *In re Phillip,* 948 F.2d 985, 987 (5th Cir. 1991); 2 COLLIER ON BANKRUPTCY ¶ 108.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) (citations omitted).

Critically, here, Canada's claim for fees is based upon 26 U.S.C. § 7430. That provision entitles him to recover attorney's fees in connection with a court proceeding brought by or against the IRS. No such proceeding occurred until *after* Canada filed for bankruptcy. Indeed, the relevant controversy was not initiated until the IRS filed its proof of claim in Canada's Chapter 11 case and Canada disputed it. There can be no dispute that Canada could not recover fees as the prevailing party before a final determination that he had actually prevailed on the penalty dispute; that occurred almost two years post-petition.

---

[18] The Defendants also argue that Canada's lawsuit must be dismissed because of sovereign immunity. Because this court rejects Canada's claims against the Government on other grounds, it does not reach that argument.

No. 18-11398

Canada's 26 U.S.C. § 7430 claim for attorney's fees in the bankruptcy case accrued no earlier than when the IRS filed its claim in the bankruptcy court and no later than July 7, 2017, when the IRS could no longer appeal the initial district court's order affirming the bankruptcy court. Accordingly, that claim is a post-petition claim. Consequently, 11 U.S.C. § 108(a) did not toll the 30-day deadline to request fees. Canada did not file this lawsuit until September 14, 2017, nearly 70 days after the final judgment was entered on the tax penalty claim objection. As such, Canada's request was untimely under 28 U.S.C. § 2412(d)(1)(B) and Canada is not a "prevailing party" pursuant to 26 U.S.C. § 7430(c)(4)(A)(ii). Canada therefore is not entitled to recover attorney's fees from the IRS and the district court below properly dismissed his claim.

## V.    Conclusion

For the foregoing reasons, the ruling of the district court below is AFFIRMED.