PER CURIAM.
This case involves a tragic cross-border incident in which a United States Border Patrol agent standing on United States soil shot and killed a Mexican national standing on Mexican soil. The three questions presented concern whether the parents of the victim of that shooting may assert claims for damages against the agent under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ; whether the shooting violated the victim's Fourth Amendment rights; and whether the agent is entitled *2005 to qualified immunity on a claim that the shooting violated the victim's Fifth Amendment rights.
Because this case was resolved on a motion to dismiss, the Court accepts the allegations in the complaint as true for purposes of this opinion. See Wood v. Moss, 572 U.S. ----, ----, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014). On June 7, 2010, Sergio Adrián Hernández Güereca, a 15-year-old Mexican national, was with a group of friends in the cement culvert that separates El Paso, Texas, from Ciudad Juarez, Mexico. Now all but dry, the culvert once contained the waters of the Rio Grande River. The international boundary runs down the middle of the culvert, and at the top of the embankment on the United States side is a fence. According to the complaint, Hernández and his friends were playing a game in which they ran up the embankment on the United States side, touched the fence, and then ran back down. At some point, Border Patrol Agent Jesus Mesa, Jr., arrived on the scene by bicycle and detained one of Hernández's friends in United States territory as the friend ran down the embankment. Hernández ran across the international boundary into Mexican territory and stood by a pillar that supports a railroad bridge spanning the culvert. While in United States territory, Mesa then fired at least two shots across the border at Hernández. One shot struck Hernández in the face and killed him. According to the complaint, Hernández was unarmed and unthreatening at the time.
The Department of Justice investigated the incident. The Department concluded that the shooting "occurred while smugglers attempting an illegal border crossing hurled rocks from close range at a [Customs and Border Patrol] agent who was attempting to detain a suspect." Dept. of Justice, Office of Public Affairs, Federal Officials Close Investigation Into the Death of Sergio Hernandez-Guereca (Apr. 27, 2012), online at http://www.justice.gov/opa/pr/federal-officials-close-investigation-death-sergio-hernandez-guereca (as last visited June 23, 2017). "[O]n these particular facts," the Department determined, "the agent did not act inconsistently with [Customs and Border Patrol] policy or training regarding use of force." Ibid. The Department also declined to bring federal civil rights charges against Mesa. In the Department's view, there was insufficient evidence that Mesa "acted willfully and with the deliberate and specific intent to do something the law forbids," and, in any event, Hernández "was neither within the borders of the United States nor present on U.S. property, as required for jurisdiction to exist under the applicable federal civil rights statute." Ibid. The Department expressed regret for the loss of life in the incident and pledged "to work with the Mexican government within existing mechanisms and agreements to prevent future incidents." Ibid.
Petitioners-Hernández's parents-brought suit. Among other claims, petitioners brought claims against Mesa for damages under Bivens, alleging that Mesa violated Hernández's rights under the Fourth and Fifth Amendments. The United States District Court for the Western District of Texas granted Mesa's motion to dismiss. A panel of the Court of Appeals for the Fifth Circuit affirmed in part and reversed in part. The panel held that Hernández lacked any Fourth Amendment rights under the circumstances, but that the shooting violated his Fifth Amendment rights. Hernandez v. United States, 757 F.3d 249, 267, 272 (2014) ; id., at 280-281 (Dennis, J., concurring in part and concurring in judgment); id., at 281 (DeMoss, J., concurring in part and dissenting in part). The panel also found "no reason to hesitate in extending Bivens to this new context."
*2006 Id., at 275. And the panel held that Mesa was not entitled to qualified immunity, concluding that "[n]o reasonable officer would have understood Agent Mesa's alleged conduct to be lawful." Id., at 279. Judge DeMoss dissented in part, arguing that Hernández lacked any Fifth Amendment rights under the circumstances. Id., at 281-282.
On rehearing en banc, the Court of Appeals unanimously affirmed the District Court's dismissal of petitioners' claims against Mesa. The en banc Court of Appeals first held that petitioners had failed to state a claim for a violation of the Fourth Amendment because Hernández was "a Mexican citizen who had no 'significant voluntary connection' to the United States" and "was on Mexican soil at the time he was shot." Hernandez v. United States, 785 F.3d 117, 119 (C.A.5 2015) (per curiam ) (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 271, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) ). As to petitioners' claim under the Fifth Amendment, the en banc Court of Appeals was "somewhat divided on the question of whether Agent Mesa's conduct violated the Fifth Amendment," but was "unanimous" in concluding that Mesa was entitled to qualified immunity. 785 F.3d, at 120. The en banc Court of Appeals explained that "[n]o case law in 2010, when this episode occurred, reasonably warned Agent Mesa" that "the general prohibition of excessive force applies where the person injured by a U.S. official standing on U.S. soil is an alien who had no significant voluntary connection to, and was not in, the United States when the incident occurred." Ibid. Because the en banc Court of Appeals resolved petitioners' claims on other grounds, it "did not consider whether, even if a constitutional claim had been stated, a tort remedy should be crafted under Bivens ." Id., at 121, n. 1 (Jones, J., concurring). Ten judges filed or joined five separate concurring opinions. Id., at 121-143.
This Court granted certiorari. 580 U.S. ----, 137 S.Ct. 291, 196 L.Ed.2d 211 (2016). The Court now vacates the judgment of the Court of Appeals and remands for further proceedings.
The Court turns first to the Bivens question, which is "antecedent" to the other questions presented. Wood, 572 U.S., at ----, 134 S.Ct., at 2066. In Bivens, this Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." Correctional Services Corp. v. Malesko, 534 U.S. 61, 66, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). A Bivens remedy is not available, however, where there are " 'special factors counselling hesitation in the absence of affirmative action by Congress.' " Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (quoting Bivens, 403 U.S., at 396, 91 S.Ct. 1999 ). In the decision recently announced in Ziglar v. Abbasi, --- U.S. ----, ----, 137 S.Ct. 1843, ----, --- L.Ed.2d ----, 2017 WL 2621317 (2017), this Court has clarified what constitutes a "special facto[r] counselling hesitation." See - -- U.S., at ---- - ----, ---- - ----, 137 S.Ct., at 1857, ---- - --- -. "[T]he inquiry," the Court explains, "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." - -- U.S., at ----, 137 S.Ct., at 1858.
The Court of Appeals here, of course, has not had the opportunity to consider how the reasoning and analysis in Abbasi may bear on this case. And the parties have not had the opportunity to brief and argue its significance. In these circumstances, it is appropriate for the *2007 Court of Appeals, rather than this Court, to address the Bivens question in the first instance. This Court, after all, is one " 'of review, not of first view.' " Expressions Hair Design v. Schneiderman, 581 U.S. ----, ----, 137 S.Ct. 1144, 1151, 197 L.Ed.2d 442 (2017) (quoting Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. ----, ----, 134 S.Ct. 2120, 2131, 189 L.Ed.2d 37 (2014) ).
With respect to petitioners' Fourth Amendment claim, the en banc Court of Appeals found it unnecessary to address the Bivens question because it concluded that Hernández lacked any Fourth Amendment rights under the circumstances. This approach-disposing of a Bivens claim by resolving the constitutional question, while assuming the existence of a Bivens remedy-is appropriate in many cases. This Court has taken that approach on occasion. See, e.g., Wood, supra, at ----, 134 S.Ct., at 2066. The Fourth Amendment question in this case, however, is sensitive and may have consequences that are far reaching. It would be imprudent for this Court to resolve that issue when, in light of the intervening guidance provided in Abbasi , doing so may be unnecessary to resolve this particular case.
With respect to petitioners' Fifth Amendment claim, the en banc Court of Appeals found it unnecessary to address the Bivens question because it held that Mesa was entitled to qualified immunity. In reaching that conclusion, the en banc Court of Appeals relied on the fact that Hernández was "an alien who had no significant voluntary connection to ... the United States." 785 F.3d, at 120. It is undisputed, however, that Hernández's nationality and the extent of his ties to the United States were unknown to Mesa at the time of the shooting. The en banc Court of Appeals therefore erred in granting qualified immunity based on those facts.
"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established ... constitutional rights of which a reasonable person would have known.' " Mullenix v. Luna, 577 U.S. ----, ----, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam ) (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ). The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The qualified immunity analysis thus is limited to "the facts that were knowable to the defendant officers" at the time they engaged in the conduct in question. White v. Pauly, 580 U.S. ----, ----, 137 S.Ct. 548, 550, 196 L.Ed.2d 463 (2017) (per curiam ). Facts an officer learns after the incident ends-whether those facts would support granting immunity or denying it-are not relevant.
Mesa and the Government contend that Mesa is entitled to qualified immunity even if Mesa was uncertain about Hernández's nationality and his ties to the United States at the time of the shooting. The Government also argues that, in any event, petitioners' claim is cognizable only under the Fourth Amendment, and not under the Fifth Amendment. This Court declines to address these arguments in the first instance. The Court of Appeals may address them, if necessary, on remand.
The facts alleged in the complaint depict a disturbing incident resulting in a heartbreaking loss of life. Whether petitioners may recover damages for that loss in this suit depends on questions that are best *2008 answered by the Court of Appeals in the first instance.
The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.
Justice GORSUCH took no part in the consideration or decision of this case.