FILED
United States Court of Appeals
Tenth Circuit

February 17, 2023

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROXANNE TORRES,

     Plaintiff - Appellant,

v.

JANICE MADRID, a New Mexico police
investigations bureau officer; RICHARD
WILLIAMSON, a New Mexico State
police investigations bureau officer,

     Defendants - Appellees.

-----------------------------

CONSTITUTIONAL
ACCOUNTABILITY CENTER;
INSTITUTE FOR JUSTICE,

     Amici Curiae.

No. 22-2001

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:16-CV-01163-LF-KK)**
_____

Kelsi Brown Corkran, Institute for Constitutional Advocacy and Protection (Mary B.
McCord and Seth Wayne, Institute for Constitutional Advocacy and Protection, and Eric
D. Dixon, Attorney and Counselor at Law, P.A., with her on the briefs), Georgetown
University Law Center, Washington, DC, for Plaintiff-Appellant.

Christina L. G. Brennan (James P. Sullivan with her on the brief), Brennan & Sullivan,
P.A., Santa Fe, NM, for Defendant-Appellees.
_____

Before **HARTZ**, **McHUGH**, and **MORITZ**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Plaintiff Roxanne Torres appeals the summary judgment in favor of Defendants Janice Madrid and Richard Williamson, agents of the New Mexico State Police Investigations Bureau. The encounter between Ms. Torres and Defendants lasted only 14 seconds. But it has raised at least three subtle Fourth Amendment and qualified-immunity issues, one of which was resolved by the United States Supreme Court in this very case. In the Background section of this opinion we provide a brief description of the encounter and introduce the issues before us and how we resolve them. In the Discussion section we explain our disposition of the issues raised by Ms. Torres and briefly address Defendants' alternative argument for affirmance. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's grant of summary judgment.

## I.     BACKGROUND

### a.  Factual History

About 6:30 a.m. on July 15, 2014, Agents Madrid and Williamson arrived at an apartment complex at 6100 Harper Avenue NE in Albuquerque. Traveling in separate unmarked vehicles with two other agents, they intended to serve an arrest warrant for Kayenta Jackson at her apartment and interview her about the check-fraud scheme for which she was charged. Defendants were dressed in dark clothing

and tactical vests that identified them as police. It was still slightly dark out and a light rain fell.

Ms. Torres was sitting in her Toyota FJ Cruiser. She had backed into a spot in front of the suspect's apartment with her rear bumper against the curb and cars parked on either side. The vehicle's engine was running and the doors were locked. Defendants approached Ms. Torres's vehicle and Agent Williamson attempted to open the driver's door. Defendants shouted commands at Ms. Torres to open her door, but they did not announce themselves as police officers.

Ms. Torres stepped on the gas and headed forward across the parking lot. The witnesses were not consistent about the location of Agent Madrid in relation to the car—whether she was in front or to the side—when it began moving. Both Defendants fired their duty weapons at Ms. Torres. Agent Williamson fired eight shots and Agent Madrid seven. Neither Defendant was struck as Ms. Torres drove past. Some of Defendants' bullets hit the front windshield of Ms. Torres's vehicle, most struck the side, and five bullets were fired at the rear of Ms. Torres's vehicle, one of them striking Ms. Torres in the back.[1] Only about 14 seconds passed from the time Defendants first issued commands to Ms. Torres to the moment the last bullet was fired. Defendants fired their 15 shots over seven seconds.

---

[1] Ms. Torres alleges in her opening brief on appeal that two bullets struck her in the back; Defendants neither challenge nor clarify that statement in their appellate briefing, and medical records seem to indicate that Ms. Torres was shot twice. But an expert retained by Ms. Torres testified that although there was some initial confusion on whether Ms. Torres's second wound was the entry point of a second bullet or the exit path of the first, Ms. Torres was shot only once.

Ms. Torres managed to drive over a curb and away from the area. She was later treated for her wounds at the University of New Mexico Hospital. The next day she was charged by criminal complaint with two counts of aggravated assault with a deadly weapon upon a police officer. The complaint states that Ms. Torres drove "toward" Defendants. Aplt. App., Vol. I at 90. On March 31, 2015, Ms. Torres entered a no-contest plea to two lesser offenses: (1) aggravated flight from a law-enforcement officer under N.M. Stat. Ann. § 30-22-1.1, and (2) assault upon a peace officer under N.M. Stat. Ann. § 30-22-21.

### b. Issues Raised by the Lawsuit

In October 2016, Ms. Torres filed a civil-rights suit under 42 U.S.C. § 1983 against Defendants in the United States District Court for the District of New Mexico, alleging that they violated her Fourth Amendment rights by using excessive force. On a motion for summary judgment by Defendants, the district court dismissed the suit, holding that because Ms. Torres had successfully fled the scene, she was not seized and therefore not entitled to Fourth Amendment protections. We affirmed. But the Supreme Court reversed. It said that it was irrelevant that Ms. Torres had not been apprehended, holding that "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021). That decision resolved the first subtle issue in this case.

After remand from the Supreme Court the district court again granted Defendants summary judgment. *See Torres v. Madrid*, No. 16-cv-01163, 2021 WL

4

6196994, at *9 (D.N.M. Dec. 30, 2021). That decision raises two subtle issues, which we resolve on this appeal.

First, the district court held that Ms. Torres's claims were barred under the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), because her claims against Defendants were inconsistent with her no-contest pleas to charges of aggravated flight from a law-enforcement officer and assault upon a peace officer. We reverse that decision because her pleas are not inconsistent with her claims that the officers used excessive force by firing at her after she had driven past them and no longer posed a threat to them.

Second, the district court held that Ms. Torres's claims were barred on the ground that Defendants were entitled to qualified immunity. It observed that although the Supreme Court had held that a person who evades the attempted restraint of law-enforcement officers is nonetheless entitled to Fourth Amendment protections, that decision came after the shooting of Ms. Torres, so her cause of action had not been clearly established at the time she was shot. But that ground for the district court's decision must be reversed because Defendants did not know Ms. Torres would escape when they shot at her, and facts unknown to officers at the moment they use force are not relevant to the qualified-immunity analysis.

That leaves two further issues that were not addressed by the district court but which Defendants raise in seeking to affirm the summary judgment on an alternate ground: (1) Did Defendants use excessive force when they continued to fire their weapons at Ms. Torres after she had driven past them; and (2) was there clearly

5

established law that their use of force was unreasonable? On these issues, we remand to the district court for further proceedings.

## II.    DISCUSSION

On appeal Ms. Torres argues that the district court erred in its analysis of both *Heck* and qualified immunity, and Defendants argue as an alternative ground for affirmance that they are entitled to qualified immunity because they did not use force that was excessive under clearly established law. We review de novo the district court's ruling on a motion for summary judgment. *See Attocknie v. Smith*, 798 F.3d 1252, 1255–56 (10th Cir. 2015) (qualified immunity); *Butler v. Compton*, 482 F.3d 1277, 1278 (10th Cir. 2007) (*Heck*). On summary judgment we review the evidence in the light most favorable to the nonmoving party and resolve all factual disputes and draw all reasonable inferences in her favor. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1387 (10th Cir. 1997); *Est. of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (applying same standard in qualified-immunity context).

### A.  The *Heck* Doctrine

We first turn to Ms. Torres's argument that her claims based on being shot in the back are not barred under *Heck*.

*Heck* bars § 1983 claims where "a judgment in favor of the plaintiff would *necessarily* imply the invalidity of h[er] conviction or sentence." 512 U.S. at 487 (emphasis added). But "[a]n excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Havens v.*

6

*Johnson*, 783 F.3d 776, 782 (10th Cir. 2015). "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.* Therefore, in cases where there are multiple uses of force or a continuing use of force, *Heck* may bar the plaintiff's claims as to some force but not all. *See Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020) (although *Heck* barred plaintiff, who had pleaded no contest to two counts of assault and battery on a police officer, from bringing excessive-force claims based on four uses of force involved in subduing him, "[t]he fifth and sixth uses of force [we]re different" and thus not barred by *Heck* because plaintiff had alleged that he "no longer posed a threat"). The analysis of whether *Heck* bars the entirety of a plaintiff's excessive-force claims thus requires "compar[ing] the plaintiff's allegations to the offense [s]he committed." *Havens*, 783 F.3d at 782.

Recall that Ms. Torres pleaded no contest to two offenses: (1) aggravated flight, which requires "willfully and carelessly driving [her] vehicle in a manner that *endangers the life of another person*" after being instructed to stop, *see* N.M. Stat. Ann. § 30-22-1.1(A) (emphasis added); and (2) assault upon a peace officer causing the officer to "reasonably believe that [she] is *in danger of receiving an immediate battery*," *see id.* § 30-22-21(A)(2) (emphasis added). Both convictions are based on Ms. Torres's decision to step on the gas, placing Defendants in potential peril. Ms. Torres therefore properly acknowledges that her plea could "foreclose[] an excessive force claim based on shots fired by Defendants at the moment [she] initially pulled forward to leave the parking space." Aplt. Br. at 28. But we have repeatedly

recognized that a reasonable use of force—such as when an officer is subject to a direct physical threat—may become unreasonable even seconds later when force persists after the threat has passed. *See Havens*, 783 F.3d at 782; *Surat v. Klamser*, 52 F.4th 1261, 1272 (10th Cir. 2022); *Hooks*, 983 F.3d at 1201. Ms. Torres's plea, justified by the alleged danger in which she placed Defendants at the moment her vehicle advanced, is therefore not "necessarily inconsistent" with a claim that Defendants later used excessive force when, despite any danger having passed, they fired additional bullets into the rear of her vehicle, including the one that struck her in the back. *See Havens*, 783 F.3d at 782.

Defendants contend that our decisions in *Havens* and *Hooks* compel a different result. We disagree.

In *Havens* we affirmed a grant of summary judgment to the officer-defendant on the basis of *Heck*. *See id.* at 782. We recognized that a conviction for assault of a peace officer was not necessarily inconsistent with a later excessive-force claim against that officer if the force was disproportionate to the need or occurred "after the need for force had disappeared." *Id.* But we determined that the § 1983 claim brought by the plaintiff—who rammed his vehicle into surrounding police vehicles before an officer shot him, later pleaded guilty to first-degree assault of the officer, and then brought suit alleging unreasonable use of force and denying all wrongdoing—was nonetheless barred under *Heck*. *See id.* at 778, 780–81, 783–84. The plaintiff's complaint did not allege, and his opening brief on appeal did not argue, that the officer had "used excessive force in response to an attempted assault by [the

8

plaintiff].” *Id.* at 783. Rather, the plaintiff contended that the use of force was unreasonable because he had done nothing wrong and had never intended or attempted to injure the officer—a “version of events [that] could not sustain the elements of attempted first-degree assault under [state] law and the factual basis for [his] plea.” *Id.*

Here, Defendants argue that Ms. Torres also asserts her innocence and that her claims against them are therefore barred. But they misstate Ms. Torres’s theory of the case. Ms. Torres concedes that *Heck* precludes recovery for force used as she drove toward the officers. Instead, she bases her claims on the bullet that hit her—one, among others, that was fired at the back of the vehicle, allegedly after any threat had passed. Ms. Torres has therefore presented a theory of liability that is not inconsistent with her plea.

As for *Hooks*, that opinion distinguished between separate uses of force to hold that only certain claims were barred under *Heck*. The plaintiff—who had pleaded no contest to two charges of committing assault and battery on arresting officers who wrestled him to the ground, tased him twice, and placed him in a chokehold—brought an excessive-force claim. *See* 983 F.3d at 1197–98. The district court dismissed the plaintiff’s complaint on *Heck* grounds, but we reversed the dismissal of the claims based on the second tasing and the chokehold. *See id.* at 1199, 1201. Defendants argue that *Hooks* does not aid Ms. Torres because the only claims we allowed to go forward in *Hooks* were those based on uses of force after the plaintiff was subdued. They seem to suggest that because Ms. Torres was not

9

subdued, they were entitled to continue using force until the vehicle stopped, so the shots fired after Ms. Torres's vehicle passed them cannot be analyzed any differently from the initial shots. But in *Hooks* we emphasized the established proposition that an excessive-force claim is not incompatible with a conviction for assault where the plaintiff claims, for example, "that the officer used force *after the need for force had disappeared*." *Id.* at 1200 (emphasis added) (internal quotation marks omitted). When we reversed the dismissal of claims based on the two uses of force after plaintiff was subdued, it was not because the plaintiff's capture was dispositive, but because the plaintiff had alleged that the justification for the use of force had disappeared.[2] *See id.* at 1201. Contrary to Defendants' argument, *Hooks* aids Ms. Torres as it permits a jury to parse Defendants' shots into those uses justified by the threat posed by Ms. Torres's vehicle and those uses not so justified.

We therefore conclude that Defendants lack a *Heck* defense to Ms. Torres's claims that they employed excessive force after the vehicle had passed the officers. The district court's grant of summary judgment must therefore be set aside insofar as it relies on *Heck*. Should this case proceed to trial, the district court will need to instruct the jury on the appropriate scope of Ms. Torres's claims. *See Hooks*, 983 F.3d at 1201; *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999).

---

[2] Defendants also rely on *McCoy v. Meyers*, in which we distinguished conduct of the officers before and after the suspect was handcuffed, *see* 887 F.3d 1034, 1047–49 (10th Cir. 2018), to further support the premise that only uses of force after a suspect is subdued may be excessive. We reject this argument for the same reasons.

### B. Qualified Immunity—Ms. Torres's Escape

Our rejection of the *Heck* ground for summary judgment does not dispose of the case because the district court had an alternative ground for dismissal. It determined that Ms. Torres's claims were barred by the doctrine of qualified immunity because, at the time she was shot, the law was not clearly established that the Fourth Amendment protects persons who successfully elude seizure. We must reverse because the court's analysis missed an important consideration.

The doctrine of qualified immunity in civil-rights suits under § 1983 protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted). It forecloses liability unless the applicable law was "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). When a defendant has asserted a qualified-immunity defense, the plaintiff must therefore show (1) that the defendant "violated . . . her constitutional rights," and (2) "that the right was clearly established at the time of the alleged unlawful activity." *Huff v. Reeves*, 996 F.3d 1082, 1088 (10th Cir. 2021) (internal quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted).

Defendants argue that they could not have violated clearly established law when they shot at Ms. Torres because it was not clearly established at that time (indeed, it was established by the Supreme Court only on its review of this very case) that the Fourth Amendment can protect those who successfully escape attempts by law enforcement to seize them. There is considerable appeal to this argument. But Defendants have overlooked the second subtle Fourth Amendment/qualified immunity issue raised on this appeal.

The point overlooked by Defendants is that the factual basis for qualified-immunity analysis is "limited to the facts that were knowable to [Defendants] at the time they engaged in the conduct in question." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (internal quotation marks omitted). Facts Defendants "learn[ed] after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Id.*

*Hernandez* was a civil-rights suit under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against a border-patrol agent who fired a shot across the border with Mexico and killed a 15-year-old Mexican national. *See Hernandez*, 137 S. Ct. at 2004, 2006. The Fifth Circuit held that the agent was entitled to qualified immunity on a Fifth Amendment due-process claim because it had not been clearly established that "an alien who had no significant voluntary connection to the United States" was entitled to Fifth Amendment protection. *Id.* at 2007 (ellipsis and internal quotation marks omitted). The Supreme Court reversed because the victim's nationality was unknown to the agent at the moment he pulled

12

the trigger and should not have been considered in assessing qualified immunity. *See id.*

As we understand *Hernandez*, the district court should not have considered in its qualified-immunity analysis that Ms. Torres eluded custody after Defendants shot at her. That fact was unknown to Defendants as they fired at Ms. Torres and therefore was irrelevant to the analysis. We therefore must reverse the judgment of the district court insofar as it relies on Ms. Torres's escape to establish qualified immunity.

### C. Qualified Immunity—Reasonableness of Force and Clearly Established Law

There remains to be decided the merits of Ms. Torres's claims that Defendants used excessive force when shooting at her through the rear window of her vehicle. Was that use of force unreasonable, *see Cordova v. Aragon*, 569 F.3d 1183, 1185–92 (10th Cir. 2009); and if so, was the unreasonableness of force in the specific circumstances of this case clearly established at the time Ms. Torres was shot? The district court has not addressed those issues. Defendants ask us to resolve them in their favor as an alternative ground for affirming the judgment below. But our customary practice is to leave such issues for the district court to decide in the first instance. *See Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) ("Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially.").

13

## III.    CONCLUSION

We **REVERSE** the district court's order granting summary judgment to Defendants, **VACATE** its judgment, and **REMAND** this matter for consideration of whether Defendants are entitled to qualified immunity because their use of force was reasonable or there was not clearly established law that it was unreasonable.