**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 7, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

ERIC ST. GEORGE,

    Plaintiff - Appellant,

v.

    No. 22-1333
    (D.C. No. 1:18-CV-01930-WJM-STV)
    (D. Colo.)

CITY OF LAKEWOOD, COLORADO;
DEVON TRIMMER, a/k/a Devon
Myers; JASON MAINES; JEFF
LARSON; DAN MCCASKY,

    Defendants - Appellees.

_____

## ORDER AND JUDGMENT*

_____

Before **MORITZ**, **ROSSMAN**, and **FEDERICO**, Circuit Judges.

_____

Eric St. George was convicted of numerous crimes stemming from an altercation with an escort and an ensuing shootout with police. After he was convicted, he asserted federal claims for excessive force, failure to prevent

---

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

excessive force, and municipal and supervisory liability. He also asserted several state-law tort claims. The district court dismissed the federal claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), determined two defendants were entitled to qualified immunity, and declined to exercise supplemental jurisdiction over the state-law claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's judgment.

## I

This case is on appeal from the district court's dismissal under Federal Rule of Civil Procedure 12(b)(6), so we accept as true all well-pleaded allegations in the operative complaint (here, the fifth amended complaint) and any documents it incorporates by reference. *See Gee v. Pacheco*, 627 F.3d 1178, 1183-86 (10th Cir. 2010). According to an affidavit St. George attached to the fifth amended complaint, his trouble began when he solicited a female escort to his apartment in Lakewood, Colorado. A dispute arose, and thirty minutes into their encounter the escort stopped, pushed St. George, and attempted to leave. He followed her outside with a gun, and when she wielded a can of mace, he fired a warning shot into the air and then a second shot at her, although St. George denies firing the second shot. The escort fled and called 911, reporting that he "made illicit sexual contact." R., vol. 4 at 123, para. 11. St. George went out for dinner and drinks.

Four Lakewood police officers, including defendants Devon Trimmer and Jason Maines, arrived at the apartment in marked police vehicles. After canvassing the area, they determined there was no immediate danger. An hour after the police arrived, St. George returned home, unaware the police were present. The officers entered his backyard and observed him through the windows at his computer with a glass of wine. They did not knock on the door, but they called him on his phone six times in fifteen minutes. St. George did not answer three of the calls, but on the three calls he did answer, the officers identified themselves as Lakewood police officers. On the fourth call, an officer told St. George the officer's "friends" were in the backyard and he should go outside to talk with them. *Id.* at 130, para. 22.00 (bolding, capitalization, and internal quotation marks omitted). St. George saw no one outside and became paranoid, believing the officers were associates of the escort who planned to ambush him. During his last call with the police, he denied officers were on scene, and when the officer with whom he was speaking told him to go outside with nothing in his hands, St. George replied, "I have something in my hands," *id.* at 134, para. 33 (internal quotation marks omitted). The officer radioed to the other officers that St. George was being threatening.

St. George then walked out his backdoor with a shotgun and loudly pumped the action to announce his presence. Trimmer and Maines took cover: Trimmer hid behind a truck, while Maines hid in the shadows behind foliage.

3

St. George stood in the backyard for some six minutes and then began walking along the building with his shotgun in the low-ready position. Maines radioed to Trimmer that St. George was walking fast in her direction. Trimmer heard his footfalls, but St. George did not know she was there. When he came into Trimmer's view, she opened fire and shot him in the leg. St. George returned fire, and Maines began shooting as well. The firefight lasted less than 90 seconds, after which St. George managed to return to his apartment and call 911, reporting he had been shot. He then crawled back outside with a handgun and fired four more rounds. Officers confronted him at the front door, and St. George surrendered.

St. George was charged in state court with several crimes. He went to trial and was convicted on two counts of attempted second-degree murder, two counts of first-degree assault, three counts of felony menacing, one count of illegal discharge of a firearm, and one count of unlawful sexual contact. He was sentenced to a total of thirty-two years in prison.

## II

Following his convictions, and while in custody serving his sentence, St. George commenced this lawsuit, amending his complaint several times. A prior iteration of the complaint alleged excessive force by Trimmer and derivative claims for failure to prevent excessive force against Maines, supervisory liability against Lakewood Police Chief Dan McCasky, and

4

municipal liability against the City of Lakewood. The district court dismissed that iteration for failure to state a claim, but granted leave to amend so St. George could reassert the excessive-force and failure-to-prevent-excessive-force claims. The district court advised him it would not reconsider any claim for supervisory or municipal liability.

St. George filed a fourth amended complaint reasserting his claims for excessive force and failure to prevent excessive force, but once again, the district court dismissed for failure to state a claim. This time, however, St. George appealed, and we reversed, concluding he plausibly alleged a Fourth Amendment violation against Trimmer based on the foregoing allegations. *See St. George v. City of Lakewood*, No. 20-1259, 2021 WL 3700918, at \*1-3 (10th Cir. Aug. 20, 2021).

On remand, St. George sought to reinstate the previously dismissed supervisory and municipal liability claims because they were predicated on the underlying excessive-force claim that we concluded was plausible. The district court directed him to file the fifth amended complaint solely to reassert his supervisory and municipal liability claims. Thus, the fifth amended, operative complaint, asserts several state-law tort claims, as well as federal claims under 42 U.S.C. § 1983, alleging Trimmer used excessive force in violation of the Fourth Amendment and Maines failed to prevent Trimmer's excessive

5

force. It also asserts federal claims for supervisory and municipal liability against McCasky and the City of Lakewood.

A magistrate judge recommended that the claims be dismissed without prejudice. He determined the federal claims were barred by *Heck* and that Trimmer and Maines were also entitled to qualified immunity. And he recommended that the district court decline to exercise supplemental jurisdiction over the state-law claims. St. George attempted to object to the recommendation, seeking several extensions of time to do so, which were granted. But when he filed his timely objections, the district court struck them for failure to comply with applicable page limitations. Although the district court granted St. George an additional twelve-day extension—until September 12, 2022—to file amended objections, he failed to meet that deadline. But he did request another extension on that date, which the district court did not consider.

Consequently, on September 21, 2022, the district court reviewed the magistrate judge's report and recommendation for clear error and, finding none, adopted the recommendation and dismissed the action, though it modified its disposition to dismiss the excessive-force and failure-to-prevent-excessive-force claims with prejudice. The district court received St. George's amended objections later that same day; they were nine days

6

late. The district court struck the amended objections because it had already dismissed the case and entered judgment.

St. George timely appealed the district court's dismissal order. He also contemporaneously moved to vacate the judgment to the extent the district court declined to consider his amended objections. On September 6, 2023, the district court construed the motion to vacate as a Federal Rule of Civil Procedure 60(b) motion and denied it. St. George did not appeal that order. Shortly thereafter, this court directed him to show cause why his merits appeal should not be dismissed for failure to comply with the firm waiver rule given his failure to object to the report and recommendation. In a handwritten response dated October 3, 2023, and in a typed response dated October 6, 2023, he described his efforts to comply with the firm waiver rule and argued it should not apply. The firm waiver issue, the merits of the appeal, and whether to consider an untimely appeal of the district court's denial of Rule 60(b) relief are now before us.

### III

We first consider whether St. George waived appellate review by failing to properly object to the magistrate judge's report and recommendation. "Under the firm waiver rule, a party who fails to make a timely objection to the magistrate judge's ruling waives appellate review of both factual and legal questions." *Sinclair Wyo. Ref. Co. v. A & B Builders,*

7

*Ltd.*, 989 F.3d 747, 781 n.23 (10th Cir. 2021) (brackets and internal quotation marks omitted). We may decline to invoke the rule in the interests of justice based on "[1] a *pro se* litigant's effort to comply, [2] the force and plausibility of the explanation for his failure to comply, and [3] the importance of the issues raised." *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (internal quotation marks omitted). The requirements of the interests-of-justice exception are satisfied here.

First, St. George diligently tried to comply with the firm waiver rule. He filed three timely motions to extend the objection deadline, and the district court granted two extensions. But when he filed his objections, which were timely, the district court struck them for exceeding its page limitations. Although the district court gave him twelve more days to file amended objections, it would have been difficult for a pro se prisoner to meet that deadline, particularly given prison restrictions due to Covid-19 at the time, as St. George asserts. He therefore sought another extension, which the district court did not consider; rather, the district court adopted the magistrate judge's report and recommendation. Later that same day, St. George filed proposed amended objections, which the court also did not consider.

Second, the force and plausibility of St. George's efforts to comply weigh in favor of excepting him from the firm waiver rule. His efforts are

8

undisputed and are borne out by the record. Moreover, he aptly identifies the difficulties facing pro se prisoners who attempt to satisfy short filing deadlines.

Finally, the importance of the issues weigh in St. George's favor. He claims Trimmer violated the Fourth Amendment by using excessive force. He was shot in a gunfight with police, and we already concluded in *St. George* that he plausibly alleged a constitutional violation. Given these circumstances, it is in the interests of justice to excuse him from the firm waiver rule and consider the merits of the appeal.

## IV

As stated above, we review a Rule 12(b)(6) dismissal de novo, accepting the well-pleaded factual allegations as true and viewing them in the light most favorable to the non-moving party. *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018). We disregard conclusory legal statements. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

### A. Heck Doctrine

We now consider the district court's dismissal of the federal § 1983 claims under *Heck*. The *Heck* doctrine provides that when a plaintiff seeks damages under § 1983, the claim is barred if "a judgment in favor of the plaintiff would *necessarily* imply the invalidity of h[is] conviction or

sentence." *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023) (internal quotation marks omitted). In other words, a civil claim is barred if it seeks to retry the same facts and legal issues from a prior case where the civil plaintiff has already been convicted beyond a reasonable doubt as a criminal defendant. "An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015). If the claim is that "the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared[,] . . . *Heck* may bar the plaintiff's claims as to some force but not all." *Torres*, 60 F.4th at 600 (internal quotation marks omitted). "To determine the effect of *Heck* on an excessive-force claim, the court must compare the plaintiff's allegations to the offense he committed." *Havens*, 783 F.3d at 782. If the plaintiff's theory of the claim is completely inconsistent with his conviction, "the excessive-force claim must be barred in its entirety." *Id.* at 783.

St George was convicted of numerous offenses, including attempted second-degree murder. Criminal attempt requires that "he engage[d] in conduct constituting a substantial step toward the commission of the offense" "with the kind of culpability otherwise required" by the underlying offense. Colo. Stat. Ann. § 18-2-101. And a person commits second-degree murder if he "knowingly cause[s] the death of a person." *Id.* § 18-3-103. The

10

question is therefore whether St. George's convictions for taking a substantial step toward knowingly causing the death of the officers is consistent with the allegations underlying his excessive-force claim. Relevant to this question, St. George also raised an affirmative defense—"defense of person"—which authorizes use of physical force if:

1. he used that physical force in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of *unlawful physical force by that other person*, and

2. he used a degree of force which he reasonably believed to be necessary for that purpose, and

3. he was not the initial aggressor, or, if he was the initial aggressor, he had withdrawn from the encounter and effectively communicated to the other person his intent to do so, and the other person nevertheless continued or threatened the use of *unlawful physical force.*

R., vol. 4 at 43 (jury instruction) (emphasis added).

St. George argues that Trimmer's use of force when she shot him was too great. He alleges that without a warrant, probable cause, or exigent circumstances, Trimmer "attempt[ed] to [m]urder [him] using her aggressive opening of gunfire upon him." *See id.* at 89, para. 6. He says Trimmer and the other officers "laid siege with firearms to [his] home in such a way as to prevent him from being able to leave." *Id.*, para. 9. And he claims Trimmer's "intent was to set [him] to flight, assault her prey[,] and arrest him . . . to effect an illicit arrest." *Id.*, paras. 10-11. Additionally, he

11

avers that "Maines fail[ed] to prevent Trimmer[']s use of excessive force," *id.* at 91, para. 20, despite knowing her "act was one of [a]ttempted [m]urder," *id.* at 92, para. 28; *see also id.* at 114-15, 145 (alleging Trimmer committed attempted first-degree murder and Maines was complicit in Trimmer's attempted first-degree murder).

The jury rejected St. George's self-defense claim and convicted him of attempted second-degree murder. That means the jury did not accept that he was defending himself against Trimmer's "unlawful physical force"; instead, the jury concluded he took a substantial step toward knowingly causing the death of the officers. *See* Colo. Stat. Ann. § 18-2-101; R., vol 4 at 43. The jury's conclusion and St. George's convictions are entirely inconsistent with his theory in his civil complaint, which is essentially that "he did nothing wrong," *Hooks v. Atoki*, 983 F.3d 1193, 1201 (10th Cir. 2020) (quoting *Havens*, 783 F.3d at 783). The claims are therefore barred by *Heck*.[1]

As for the municipal and supervisory liability claims, they require an underlying violation. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (explaining that supervisory liability requires a violation of

---

[1] On appeal, St. George raises a new argument: that Trimmer and Maines engaged in mutual combat with him. *See* Aplt. Opening Br. at 26. Because St. George failed to preserve this argument in the district court, we do not consider it. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011).

federally protected rights); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). Under *Heck*, however, St. George cannot make that showing unless and until his convictions are invalidated, at which time he may reassert his municipal and supervisory liability claims. *See McCarty v. Gilchrist*, 646 F.3d 1281, 1288-90 (10th Cir. 2011) (explaining that accrual of municipal and supervisory liability claims occurs upon the date the conviction is no longer outstanding). Hence, the district court properly dismissed the § 1983 claims under *Heck*, and we affirm the district court's dismissal without prejudice, *see Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice.").[2] But because the district court also dismissed the claims against Trimmer and Maines *with prejudice* based on qualified immunity, we evaluate that ruling next.

---

[2] St. George contends applying *Heck* to his municipal and supervisory liability claims contravenes *St. George*. *See* Aplt. Opening Br. at 14. That is not correct. *St. George* concluded he plausibly alleged a Fourth Amendment violation, *see* 2021 WL 3700918, at *8, but that conclusion did not foreclose the alternative ruling on remand that *Heck* barred his claims. St. George also contends defendants waived the *Heck* bar by failing to raise it in response to prior iterations of the operative, fifth amended complaint. But regardless of what arguments defendants made in response to claims asserted in the prior complaints, the fifth amended complaint superseded all others. *See Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007).

13

## B. Qualified Immunity

Qualified immunity shields government officials from suit under § 1983 unless the "plaintiff demonstrates (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) (internal quotation marks omitted). For a right to be clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted). "We do not define the relevant constitutional right at a high level of generality[,] and the clearly established law must be particularized to the facts of the case." *Flores v. Henderson*, 101 F.4th 1185, 1197 (10th Cir. 2024) (brackets, ellipsis, and internal quotation marks omitted).

It was not clearly established that an officer violates the Fourth Amendment by using deadly force without warning when facing an armed suspect under the circumstances in this case. St. George disputes this conclusion, but the cases he relies upon are distinguishable.

He first cites *Pauly v. White*, 814 F.3d 1060 (10th Cir. 2016), *vacated by White v. Pauly*, 580 U.S. 73 (2017), arguing "it [was] clearly established law that warnings must be given," Aplt. Opening Br. at 15. In *Pauly*, police

14

shot and killed Samuel Pauly. 814 F.3d at 1064. Samuel's brother, Daniel, had been involved in a road-rage incident, and responding officers went to his and his brother's house to investigate. *Id.* at 1065-66. When the brothers saw flashlights coming toward the house, they shouted, "'Who are you?' and, 'What do you want?'" *Id.* at 1066. One officer replied, "Hey (expletive), we got you surrounded. Come out or we're coming in." *Id.* (internal quotation marks omitted). Another officer shouted once, "Open the door, State Police, open the door," although Daniel did not hear the police announcement until the altercation was over. *Id.* (internal quotation marks omitted). The brothers, believing they were facing a home invasion, armed themselves and shouted, "We have guns." *Id.* (internal quotation marks omitted). Just as they made that statement, a third officer, Ray White, arrived on scene and took cover behind a stone wall fifty feet away. *Id.* at 1066. Seconds later, Daniel fired two warning shots, and a few seconds after that, Samuel pointed his weapon out the front window in the direction of White. *Id.* at 1066-67. From his position behind the stone wall fifty feet away, White shot and killed Samuel through the window. *Id.* at 1067.

As an initial matter, the obvious problem with *Pauly* is that it was vacated by the Supreme Court, which ruled that White did *not* violate clearly established law under the foregoing facts. *White*, 580 U.S. at 78. The Court explained that *Pauly* erred in concluding it was clearly established

15

that a reasonable officer in White's position was required to warn a dangerous suspect to drop his weapon before using deadly force. *See id.* at 77-78. The Court determined the error was because *Pauly* incorrectly defined "clearly established law" at a high level of generality, rather than requiring that it be "particularized to the facts of the case." *Id.* at 79 (internal quotation marks omitted). The Court emphasized that *Pauly*'s clearly-established-law analysis should have "identif[ied] a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment." *Id.* These admonishments severely undermine St. George's reliance on *Pauly*.

But *Pauly* was not only vacated by the Supreme Court; it is also distinguishable for at least four important reasons. First, the officers were investigating a relatively minor road-rage incident, while Trimmer and Maines were investigating a report of an unlawful sexual contact by a suspect who had allegedly fired two rounds, one into the air and a second at a fleeing woman. Second, in *Pauly*, the officers did not identify themselves as police, except for one officer saying, "Open the door, State Police, open the door," which the surviving brother did not hear.  814 F.3d at 1066. By contrast, the officers here identified themselves as Lakewood police three times on the phone, and Trimmer knew of the calls because she

16

was told on the radio he was being threatening.[3] Third, in *Pauly*, White shot and killed Samuel from a protected position fifty feet away, even though Samuel was not advancing toward him. Here, however, Trimmer was merely hiding behind a truck and could hear St. George's footfalls advancing toward her. She heard him pump the action on the shotgun when he came outside, and Maines radioed that he was walking in her direction. Fourth, White shot and killed Pauly whereas Trimmer shot St. George in the leg, which might indicate an intent to wound and mitigate the threat, not to kill. Given these distinctions, *Pauly* is not "particularized to the facts of the case." *Flores*, 101 F.4th at 1197 (internal quotation marks omitted).

St. George also cites *Cooper v. Sheehan*, 735 F.3d 153 (4th Cir. 2013), and *George v. Morris*, 736 F.3d 829 (9th Cir. 2013), but these cases are distinguishable too. In *Cooper*, two officers responded to a mobile home after reports of two men screaming at one another. 735 F.3d at 155. As the officers approached the mobile home, one officer tapped on the window, but neither of them announced his presence or identified himself as police. *Id.* One of the men—Cooper—heard the sound at the window, peered out the back

---

[3] St. George now denies that the officers identified themselves and argues this fact contradicts our previous decision in *St. George*. *See* Aplt. Opening Br. at 18. But our previous decision clearly indicates the officers identified themselves three times during their calls with St. George, as he alleged. *See* 2021 WL 3700918, at *2-3; R., vol. 4 at 129, ¶ 19; *id.* at 130, ¶ 22; *id.* at 134, ¶ 32.

door, and saw nothing. *Id.* He picked up a shotgun by the back door and exited two or three steps onto the back porch, pointing the shotgun muzzle to the ground. *Id.* By that time, the officers had advanced to the porch, and one of them stumbled on a concrete block. *Id.* at 155-56. As the officer regained his balance, Cooper walked onto the porch, and when the officers saw him with the shotgun, they shot him repeatedly without warning. *Id.* at 156. The Fourth Circuit affirmed the denial of qualified immunity, noting Cooper held a shotgun but made no moves, made no threats, and disobeyed no commands. *Id.* at 159, 161. The court also observed the officers had no information indicating he posed a threat, nor did they identify themselves as police. *Id.* at 159.

*Cooper* is distinguishable because the officers were not responding to a crime, they did not identify themselves, Cooper did not pump his shotgun in a threatening manner, and Cooper was not advancing on them. But here the officers were responding to reports of a serious crime with shots fired, they identified themselves three times, and St. George was advancing on Trimmer having already behaved in a threatening manner.

As for *George*, the Ninth Circuit affirmed the denial of qualified immunity to three officers who responded to a domestic disturbance in which a woman was heard exclaiming, "No!" and "My husband has a gun!" 736 F.3d at 832, 840 (internal quotation marks omitted). The officers were

18

met by the woman who asked them not to scare her husband; he was on their balcony patio with a gun. *Id.* at 832. The officers established a perimeter, and one officer identified himself as law enforcement. *Id.* Another officer left his post upon hearing yelling. *Id.* The third officer saw the husband holding a walker and a pistol with the barrel pointed down. *Id.* Twelve seconds after the officers broadcast that he had a firearm, the husband was shot. *Id.* at 833.

*George* is distinguishable because, again, unlike this case, the police were not responding to a serious crime, there had been no shots fired, and the husband was not advancing on them. Although one officer did identify himself to the husband, the remaining distinctions are too significant to apply *George* to the facts of this case.

Accordingly, St. George fails to demonstrate the law was clearly established such that Trimmer and Maines should be denied qualified immunity. We affirm the district court on this ground as well.

### C. State-Law Claims

St. George contends the district court should have exercised supplemental jurisdiction over his state-law tort claims. But having dismissed all the federal claims, the district court properly acted within its discretion in declining to exercise supplemental jurisdiction over the state-law claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011)

(reviewing for abuse of discretion and recognizing that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims") (internal quotation marks omitted).

## V

Finally, St. George challenges the district court's denial of Rule 60(b) relief, through which he sought to vacate the judgment to the extent the district court declined to consider his amended objections to the magistrate judge's report and recommendation. A timely appeal from the denial of Rule 60(b) relief is jurisdictional and requires an appellant to file a new notice of appeal or an amended notice of appeal. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1010 (10th Cir. 2018) ("When an appellant challenges an order ruling on a motion governed by Appellate Rule 4(a)(4)(B)(ii), a new or amended notice of appeal is necessary . . . ."). St. George did not amend his notice of appeal, but his response to our show-cause order is the functional equivalent of a notice of appeal. *See Smith v. Barry*, 502 U.S. 244, 248-49 (1992).

To be the functional equivalent of a notice of appeal, a document must be filed within the time prescribed by Federal Rule of Appellate Procedure 4 and "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court

to which the appeal is taken." *Id.* at 247-48 (internal quotation marks omitted)). The district court denied St. George's motion to vacate the judgment on September 6, 2023. Thus, he had thirty days—until October 6—to appeal. *See* Fed. R. App. P. 4(a)(1)(A). His handwritten response and his identical typed response to our show cause order were timely under the prison mailbox rule because they were deposited into the prison legal mail system on October 3 and October 4, 2023, respectively.[4] Further, the responses identify St. George as the party seeking to appeal, they indicate he sought to appeal the district court's orders striking his amended objections and denying his motion to vacate the judgment, and they name this court as the court to which the appeal was to be taken. The responses fulfill the requirements of a notice of appeal. *See Smith*, 502 U.S. at 248-49. We therefore consider St. George's challenge to the denial of Rule 60(b) relief.

We review the denial of Rule 60(b) relief for an abuse of discretion. *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016). "Rule 60(b) relief is

---

[4] The prison mailbox rule provides that a prisoner's notice of appeal will be deemed timely if the prisoner deposits it in the prison's internal mail system on or before the last day for filing. *See United States v. Ceballos-Martinez*, 387 F.3d 1140, 1143 (10th Cir. 2004). If there is no prison mail system, timely filing must be established by declaration in compliance with 28 U.S.C. § 1746 or a notarized statement setting forth the date of deposit and that first-class postage has been prepaid. *Id.* at 1143-44.

extraordinary and may only be granted in exceptional circumstances." *Id.* (internal quotation marks omitted). "We will not reverse the district court's decision on a Rule 60(b) motion unless that decision is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (internal quotation marks omitted). We will reverse the denial of relief under Rule 60(b)(6), which has been described "as a grand reservoir of equitable power," "only if we find a complete absence of a reasonable basis and are certain that the decision is wrong." *Johnson v. Spencer*, 950 F.3d 680, 700-01 (10th Cir. 2020) (internal quotation marks omitted).

There was no abuse of discretion here. The district court concluded St. George offered no grounds for relief under Rule 60(b)(1)-(5) and he was not entitled to relief under Rule 60(b)(6). The district court reasoned that he failed to comply with its page limitations and submit timely objections despite receiving several extensions. On appeal, St. George does not dispute his noncompliance; he instead contends it was unreasonable to reject his amended objections given his efforts to comply with the district court's rules. But that argument does not demonstrate the denial of Rule 60(b) relief was arbitrary, capricious, whimsical, or lacking a reasonable basis. Consequently, St. George's challenge to the denial of Rule 60(b) relief is unavailing.

22

## VI

The district court's judgment is AFFIRMED. St. George's motion to proceed on appeal without prepayment of costs and fees is granted.

Entered for the Court


Richard E.N. Federico
Circuit Judge